IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| COREY ZIMMERMAN <br><br> Plaintiff, <br><br> v. <br><br> VECTRONIX, INC. and OPTICS 1, INC., <br><br> Defendants. | Case No. 1:17-cv-00299 <br> Hon. Liam O'Grady <br> Hon. Ivan D. Davis |

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. No. 22. Discovery in this case closed on September 29, 2017. While Defendants filed the instant motion on August 30, 2017, the Court received supplemental briefing following the close of discovery. The Court has thoroughly considered the extensive briefings and dispensed with oral arguments. For the following reasons, the Court finds that Plaintiff has failed to carry his burden to prove a prima facie case for age discrimination under the ADEA and that Plaintiff is unable to show that Defendant's non-discriminatory reasons for terminating Mr. Zimmerman were pretextual. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**. A separate order has issued. Dkt. No. 75.

### I. BACKGROUND

Prior to merging with Optics 1 in 2016, Vectronix sold integrated, handheld module and precision systems for observation, detection, location, and targeting solutions, including original equipment manufacturer (OEM) modules designed for integration into other products. Statement of Undisputed Material Facts ¶ 2-3. Prior to merging with Vectronix in 2016, Optics 1 was a

wholly owned research and development subsidiary of Vectronix. *Id.* Plaintiff Corey Zimmerman was born in 1952. *Id.* ¶ 1. In 2011, defendant Vectronix hired Zimmerman, at the age of 58, as a Business Development and Sales Engineer. *Id.* ¶ 5. Zimmerman did not meet sales goals for his position. *Id.* In 2016, Zimmerman had a sales target of $15.4 million. *Id.* ¶ 6. He achieved approximately $7 million in sales that year. *Id.* ¶ 7. At the same time, Vectronix was experiencing years of repeated losses. *Id.* ¶ 9. Total revenue fell from $62.4 million in 2013 to $38.5 million in 2016. In 2016 alone, Vectronix lost $16.2 million. *Id.*

In 2016, Vectronix and Optics 1 began the process of merging, which involved combining sales teams from each company. *Id.* ¶ 11. Prior to the merger, Vectronix employed eight personnel on the sales team and Optics 1 employed five. Id. Based on projected sales and market conditions, the companies determined that the combined sales team would require eight employees, thus necessitating a reduction in force (RIF). *Id.* To carry out the RIF, management evaluated which individuals would be best positioned to grow the business and maximize the effectiveness of the merged company. *Id.* ¶ 12.

Management determined that Bob Lachance, the director of sales for Optics 1 prior to the merger, would lead the merged sales team. *Id.* ¶ 14. Only one OEM sales position would exist on the merged sales team, titled "Business Development Manager, OEM Solutions." *Id.* ¶ 15. Shannon Larbig, an Optics 1 legacy employee under Mr. Lachance, was selected for the position and Mr. Zimmerman was terminated in the reduction in force. *Id.*

Ms. Larbig completed interviews with Optics 1 in June 2016 and joined the sales team in October 2016. *Id.* ¶ 13. Ms. Larbig is under the age of 40. Additional Statement of Disputed Material Facts ¶ 9. Prior to joining Optics 1, Ms. Larbig had worked in OEM sales in another military contracting company, selling a specific OEM product. Statement of Undisputed Material

Facts ¶ 12. She had seven years of OEM sales experience prior to joining Optics 1. *Id.* ¶ 13. During her time with her previous employer, Ms. Larbig grew military sales by 30% and brought in $6.5 million in OEM module sales in 2015, more than tripling her sales goal. *Id.* ¶ 12.

At no time prior to the merger, during the merger, or following Mr. Zimmerman's termination did anyone affiliated with Vectronix or Optics 1 refer to Mr. Zimmerman's age. *Id.* ¶ 19.

## II. LEGAL STANDARD

Summary judgment will be granted where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact. FED. R. CIV. PRO. 56(c); *Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 426 (E.D. Va. 2010). Conclusory assertions of state of mind or motivation are insufficient. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). As the Supreme Court has held, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247-248 (1986)) (emphasis in original).

Terminations on the basis of age implicate the Age Discrimination in Employment Act of 1967 (ADEA). In an ADEA case, the plaintiff bears the burden of demonstrating that age was the but-for cause of plaintiff's termination. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-177 (2009). In cases where there is no direct evidence of age discrimination, a plaintiff may still prevail in an ADEA claim under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The framework consists of a four-part prima facie test which, if met, shifts the burden to the defendant to prove a non-discriminatory reason for the

3

termination. *Id.* If the defendant satisfies its burden, the plaintiff may still prevail if the plaintiff can demonstrate that the established non-discriminatory reason was merely pretextual. *Lettieri v. Equant Inc.*, 478 F.3d 640, 646-47 (4th Cir. 2007).

In the context of an RIF, a modified prima facie test applies. Establishing the prima facie case where termination was part of a reduction in force requires the plaintiff to demonstrate 1) he was in the protected age group, 2) he was discharged, 3) he was performing at a level substantially equivalent to the lowest level of those of the group retained, and 4) the process of selection produced a residual work force of persons in the group containing substantially younger persons who were performing at a level lower than that at which he was performing. *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir. 2000) (citing *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993). This framework is applicable at the summary judgment stage. *Mitchell* at 1317.

### III. DISCUSSION

Because the parties agree that there is no direct evidence of age discrimination, Mr. Zimmerman's claim falls under the burden-shifting framework of *McDonnell Douglas*. Because Vectronix terminated Mr. Zimmerman pursuant to a reduction in force, the Court finds the modified prima facie framework of *Mitchell* applicable. Under this framework and undisputed facts of the case, Defendants are entitled to summary judgment for two reasons. First, Plaintiff is unable to prove a prima facie case of age discrimination because he cannot demonstrate that he was performing at substantially the same level as Ms. Larbig, the retained employee, or that the residual workforce consisted of substantially younger employees performing at a lower level than he was. Second, even if Plaintiff were able to establish a prima facie case, Defendants have demonstrated clear non-discriminatory reasons for Mr. Zimmerman's firing, specifically his

failure to meet sales benchmarks. Discovery has not yielded any evidence that would suggest that reason to be pretextual.

*Prima Facie Case*

Elements 1 and 2 of the *Mitchell* framework are plainly established in this case and Defendants concede as much. Mr. Zimmerman is unable to prove elements 3 and 4 of the framework, however, because he cannot demonstrate that he was performing at substantially the same level as Ms. Larbig, the retained employee, or that the residual workforce consisted of substantially younger employees performing at a lower level than he.

In arguing that elements 3 and 4 are both established, Mr. Zimmerman rests his argument on the point that Ms. Larbig and Mr. Zimmerman's sales figures cannot be compared – they are apples and oranges. He relies on the fact that he had an established (though underperforming) sales record at Vectronix, while Ms. Larbig had only been employed with Optics 1 for two months when the RIF took place. The Court finds this point convincing – the two employees did not have comparable sales figures because they were not working at the same company at the same time. However, by pointing out that Ms. Larbig could not have been better suited to grow the sales segment in the merged company because her sales figures are not comparable to Mr. Zimmerman's figures, Mr. Zimmerman fatally undermines his ability to establish his own prima facie case. Mr. Zimmerman bears the burden of establishing a prima facie case that 3) he was performing at a level substantially equivalent to the lowest level of those of the group retained, and 4) the process of selection produced a residual work force of persons in the group containing substantially younger persons who were performing at a level lower than that at which he was performing. *Stokes,* 206 F.3d at 230. Mr. Zimmerman argues that this is a disputed issue of material fact that must go to the jury for them to determine who was performing at a higher level

at the time of the RIF. But where such a comparison cannot be made because of apples-to-oranges sales figures, this is an irreconcilable debate and ultimately immaterial to the question at the summary judgment stage – has the plaintiff carried his burden of production with respect to *establishing* the prima facie case? Mr. Zimmerman has not.

Instead, Mr. Zimmerman attacks the conclusions of Defendants' senior managers that Ms. Larbig was best qualified to develop the sales figures sought in the newly merged corporation and in support points to the fact that Ms. Larbig's sales expectations and performance in the newly merged company were lower than Mr. Zimmerman's had been in a previous year. The Court finds these arguments unconvincing for two reasons. First, Ms. Larbig's sales expectations and figures from a time period after Mr. Zimmerman's termination are not relevant to assessing the reasons for Mr. Zimmerman's termination where a significant restructuring of the company and the sales environment had also taken place. Second, the ADEA does not entitle a defendant to substitute his own business judgment or the trier of fact's business judgment for the business judgment of qualified company managers. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2006).

In short, the only disputed issue of material fact in this case is which candidate was better qualified to lead the OEM sales push in the newly merged company. As undisputed facts demonstrate that both were qualified, deciding who was *better* qualified is not within the purview of the trier of fact but rather a matter of business judgment committed to the discretion of company managers. *See Clay* at 946 (affirming summary judgment for defendant corporation that laid off workers and changed employment conditions during a down-sizing, noting that "[i]t is not for this court or any other governmental agency to direct the business practices of a

company. . . It is not the purpose of the EEOC nor the function of this court to second guess the wisdom of business decisions."); *see also Dejarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998) ("this Court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . .'" (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997) (quotations and citations omitted))).

Based on the facts at hand, there is no genuine issue of material fact for a jury to resolve as to the prima facie case. Mr. Zimmerman had a history of substantially missing sales targets at Vectronix in the years leading up to the merger. Ms. Larbig, a recent hire at Optics 1, showed promise, was hired by the individual now leading the combined sales team, and did not have a history of missing sales targets. Based on those facts, the only way to establish a prima facie case as to elements 3 and 4 of the *Mitchell* framework would be to substitute the trier of fact's business judgment for Defendants'. Accordingly, Mr. Zimmerman has failed to establish a prima facie case of age discrimination under the ADEA and Defendants are entitled to summary judgment.

*Pretext*

Even if Mr. Zimmerman established a prima facie case, Defendants have shown a non-discriminatory reason for his termination – the sales team had to be downsized and Mr. Zimmerman had poor sales figures at Vectronix, a company that was in serious financial decline necessitating the merger. Notably, Mr. Zimmerman does not dispute that he failed to meet performance benchmarks, even with the inclusion of non-OEM sales in his annual figures. Statement of Undisputed Facts ¶ 7 (In 2015, Mr. Zimmerman achieved less than $500,000 in OEM sales towards an OEM sales goal of $15.4 million). Instead, Mr. Zimmerman returns to the

apples-to-oranges comparison of sales figures and qualifications to argue that these reasons are pretextual. As with Mr. Zimmerman's arguments on the prima facie elements *supra*, Mr. Zimmerman's success depends on having a trier of fact substitute its business judgment for that of Vectronix and Optics 1 management. The Court finds that Mr. Zimmerman cannot point to any evidence suggesting that Defendants' reasons for termination are pretextual or unworthy of credence. As such, Defendants are entitled to summary judgment. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Ultimately, the undisputed facts demonstrate that Mr. Zimmerman was the OEM sales person for a company with poor sales figures, a company that needed to go through a reduction in force and merger with a sister company to survive. The sales team leader from that sister company was put in charge of the new consolidated sales team. With two employees for one post, the sales team leader was faced with one employee from the troubled company who was not meeting benchmarks despite years in the business and a new, promising employee from the sales team leader's prior team. In exercising their business judgment, there is not a scintilla of evidence that Defendants considered Mr. Zimmerman's age or that the exercise of business judgment was pretext for terminating Mr. Zimmerman on the basis of his age.

### IV. CONCLUSION

Mr. Zimmerman is unable to carry his burden to establish a prima facie case of age discrimination and cannot rebut as pretextual Defendants asserted non-discriminatory reasons for Mr. Zimmerman's termination. For these reasons and for good cause shown, Defendants are entitled to summary judgment.

December 15, 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge